UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**SERGIO D. AGUILAR and XIOMARA AGUILAR,**<br>    a/k/a **JANET AGUILAR,**<br><br>                    **Debtors**<br>―――――――――――――――――<br>**JOSEPH BRAUNSTEIN,**<br>    Chapter 7 Trustee,<br><br>                    **Plaintiff**<br>v.<br><br>**JASON DEXTER et al.,**<br><br>                    **Defendants** | Chapter 7<br>Case No. 08-11434-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 08-1263 |

## MEMORANDUM OF DECISION

This adversary proceeding involves title to two residential condominium units located in Chelsea, Massachusetts.[1]  The plaintiff is Joseph Braunstein (the "Trustee"), as trustee in bankruptcy in the joint chapter 7 case of debtors Sergio and Xiomara Aguilar (the "Aguilars" or "Debtors").  The defendants are Jason Dexter ("Dexter"), transferee of Unit 2; Michaela Betty ("Betty"), transferee of Unit 4; and their respective mortgagees, Taylor, Bean & Whitaker Corp., Inc. ("Taylor"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and GMAC Mortgage Corp. ("GMAC") (collectively, the "Defendants").  The Trustee seeks a declaratory judgment that certain prepetition conveyances by the Debtors to Dexter and Betty were ineffective to convey title of their respective units to them, and therefore that title to the units belongs to the Debtors' bankruptcy estate free and clear of the legal and equitable claims thereto of Dexter, Betty, and

―――――――――――――――――
[1]  The case initially also involved a third condominium unit and its purchaser and mortgagee, Yinyun Chen and Washington Mutual Bank, F.A., but the Trustee and these defendants have settled and stipulated to dismissal of the claims between them.

1

their mortgagees.  By counterclaims, the Defendants collectively seek a declaration that the conveyances were effective and that legal title to the units does not belong to the estate.  In the alternative, if the Court determines that the conveyances to Dexter and Betty were ineffective to convey legal title, then the Defendants seek determinations (i) that the Debtors—and now the Trustee, as holder of their estate—hold the units subject to constructive trusts for the benefit of the Defendants; (ii) that their equitable interests as beneficiaries of these constructive trusts are excluded from the estate by 11 U.S.C. § 541(d); and (iii) that their equitable rights as beneficiaries of the constructive trusts are not subject to the Trustee's "strong-arm" powers 11 U.S.C. § 544(a)(1) and (3).

Rather than appear and present evidence in support of their positions at a trial, the parties stipulated to certain facts and to the introduction of certain exhibits and have submitted the matter for judgment on this record, on a case stated.  *See Industrial Communications & Electronics, Inc. v. O'Rourke*, 582 F.Supp.2d 103, at 104-105 (D. Mass. 2008) and cases cited.  The parties further agreed that the Court could make the appropriate and warranted declarations, as a matter of law, based on the stipulated undisputed facts and exhibits.  Each of the parties filed briefs and reply briefs in support of their positions and appeared for oral argument.

For the reasons set forth below, the Court holds that the conveyances were effective and therefore that the bankruptcy estate has no interest in the disputed units.

**FACTS**

The parties have submitted this adversary proceeding for adjudication on a record comprised of certain agreed facts and eleven agreed exhibits.  When a matter is submitted in this manner, the court is bound by the stipulated facts but may draw such inferences from the

2

agreed facts as are appropriate.[2]  The facts set forth below are first the agreed facts as enumerated by the parties, followed by the findings of the court as to the relevant contents of agreed exhibits and as to inferences from agreed facts and exhibits.

a.  **The Agreed Facts**

The parties agree that the following enumerated facts are admitted and require no further proof:

**The Condominium**

1. On October 22, 2002, Sergio Aguilar and Xiomara Aguilar, also known as Janet Aguilar, took title to improved real property located at 66 Hooper Street, Chelsea, Suffolk County, Massachusetts ("Property") from Juan V. Quintero and Maria S. Quintero by a quitclaim deed which was recorded with the Suffolk County Registry of Deeds on October 23, 2002 at Book 29639, Page 181 ("Property Deed").

2. The Aguilars held title to the Property in their individual capacities as tenants by the entirety.

3. On February 7, 2005, the Aguilars executed the "Master Deed 66 Hooper Street Condominium" ("Master Deed").

4. On February 15, 2005, the Master Deed was recorded with the Suffolk County Registry of Deeds at Book 36484, Page 190.

---

[2] *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, at 603 (1st Cir. 1995) (where, in a nonjury case, the basic dispute between the parties concerns the factual inferences that one might draw from the more basic facts to which the parties have drawn the court's attention, there are no significant disagreements about those basic facts, and neither party has sought to introduce additional factual evidence or asked to present witnesses, the district court is freed from the usual constraints that attend the adjudication of summary judgment motions and may then engage in a certain amount of differential factfinding, including the sifting of inferences).  To be clear, the present case is not before the court on cross-motions for summary judgment, but for judgment on a case stated.  The constraints of the summary judgment process do not apply.

3

5. The four residential units comprising the Condominium are identified in the Master Deed as Unit 1, Unit 2, Unit 3, and Unit 4.

6. The Master Deed was prepared by the Aguilars or on their behalf by their attorney Joseph Cataldo ("Cataldo").

7. On February 7, 2005, the Aguilars executed the "66 Hooper Street Condominium Trust" ("Condominium Trust").

8. On February 15, 2008, the Condominium Trust was recorded with the Suffolk County Registry of Deeds at Book 36484, Page 199, immediately after the Master Deed was recorded.

9. The Condominium Trust was prepared by the Aguilars or on their behalf by Cataldo.

10. On March 24, 2005, the Aguilars executed an amendment to the Master Deed titled "Hooper Street Condominium Amendment To Master Deed" ("Amendment") under which they amended certain terms to the Master Deed relating to Unit 2.

11. The Amendment was recorded with the Suffolk County Registry of Deeds on March 24, 2005 at Book 36710, Page 278.

**Unit 2**

12. On March 24, 2005, a unit deed to Defendant Jason Dexter ("Dexter") relative to Unit 2 (the "Unit 2 Deed"), bearing the authentic signatures of the Aguilars, was delivered to Dexter and recorded with the Suffolk County Registry of Deeds on March 25, 2005 at Book 36724, Page 132. The Unit 2 Deed was prepared by Cataldo at the direction of the Aguilars.

13. The Aguilars held title to Unit 2 in their individual capacities and not as trustees of the Condominium Trust at the time of execution of the Unit 2 Deed.

14. The Aguilars intended to convey title to Unit 2 to Dexter and to sell Unit 2 to Dexter for $235,000.00.

4

15. Dexter intended to receive title to Unit 2 from the Aguilars and to purchase Unit 2 for $235,000.00.

16. Dexter and/or his lender, the Defendant Taylor, Bean & Whitaker Corp., Inc. ("Taylor"), paid the agreed purchase price to the Aguilars for Unit 2.

17. The Aguilars delivered possession of Unit 2 to Dexter at about the time the Unit 2 Deed was recorded.

18. Dexter has possessed, used, and occupied Unit 2 since recording of the Unit 2 Deed, and has paid taxes, condominium fees, and his mortgage since then.

**Unit 2 Mortgage**

19. In connection with his purchase of Unit 2, Dexter executed and delivered a mortgage to Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Taylor in the original principal amount of $211,500.00 ("Taylor Mortgage").

20. The Taylor Mortgage was recorded with the Suffolk County Registry of Deeds on March 25, 2005 at Book 36724, Page 137.

21. The Aguilars knew that Dexter would grant a mortgage to a lender in connection with his purchase of Unit 2.

22. Dexter and Taylor each intended to secure the Taylor Mortgage with Unit 2.

**Unit 4**

23. On March 24, 2005, a unit deed to Defendant Michaela Betty ("Betty") relative to Unit 4 (the "Unit 4 Deed"), bearing the authentic signatures of the Aguilars, was delivered to Betty; the Unit 4 Deed was recorded with the Suffolk County Registry of Deeds on March 24, 2005 at Book 36711, Page 208.

24. The Unit 4 Deed was prepared by Cataldo at the direction of the Aguilars.

25. The Aguilars held title to Unit 4 in their individual capacities and not as trustees of the Condominium Trust at the time of execution of the Unit 4 Deed.

26. The Aguilars intended to convey title to Unit 4 to Betty and to sell Unit 4 to Betty for $235,000.00.

27. Betty intended to receive title to Unit 4 from the Aguilars, and agreed to purchase Unit 4 from the Aguilars for $235,000.00.

28. Betty and/or her lender, the Defendant GMAC Mortgage Corporation ("GMAC"), paid the agreed purchase price to the Aguilars for Unit 4.

29. The Aguilars delivered possession of Unit 4 to Betty at about the time the Unit 4 Deed was recorded.

30. Betty has possessed, used, occupied, and/or leased Unit 4 to others since then, and has paid taxes, condominium fees, and her mortgage since recording of the Unit 4 Deed.

**Unit 4 Mortgage**

31. In connection with her purchase of Unit 4, Betty executed and delivered a mortgage to MERS as nominee for GMAC in the original principal amount of $188,000.00 ("GMAC Mortgage").

32. The GMAC Mortgage was recorded with the Suffolk County Registry of Deeds on March 24, 2005 at Book 36711, Page 213.

33. The Aguilars knew that Betty would grant a mortgage to a lender in connection with Betty's purchase of Unit 4.

34. Betty and GMAC each intended to secure the GMAC Mortgage with Unit 4.

**The Record At The Suffolk County Registry Of Deeds**

35. The Master Deed, Amendment, and Condominium Trust were recorded with the Suffolk County Registry of Deeds before the Unit 2 Deed, Unit 3 Deed, Unit 4 Deed, Taylor Mortgage, Washington Mutual Mortgage and GMAC Mortgage were recorded.

36. The Master Deed, Amendment, Condominium Trust, Unit 2 Deed, Unit 3 Deed, Unit 4 Deed, Taylor Mortgage, GMAC Mortgage and Washington Mutual Mortgage were recorded with the Suffolk County Registry of Deeds more than 90 days prior to the Petition Date.

37. The only unit deeds executed by the Aguilars following the recording of the Master Deed material to this action are the Unit 2 Deed, the Unit 3 Deed, and the Unit 4 Deed.[3]

38. The parties have stipulated to those portions of the grantor index at the Suffolk County Registry of Deeds that are material to this action.

**Additional Stipulations**

39. On March 3, 2008 (the "Petition Date"), the Aguilars filed a petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code, thereby commencing the present bankruptcy case.

40. On April 10, 2008, the Aguilars' bankruptcy proceeding was converted from Chapter 13 to Chapter 7, and Joseph Braunstein was appointed Trustee on April 14, 2008.

41. By executing and recording the Master Deed, the Aguilars submitted the Property to the condominium form of ownership and converted the Property to a four-unit residential condominium with parking pursuant to G.L. c.183A.

---

[3] On June 28, 2005, the Aguilars executed a unit deed relative to Unit 1 which was recorded on June 28, 2005 at Book 37412, Page 307. That deed and Unit 1 are the subject of a contested motion to sell pursuant to 11 U.S.C. § 363 in the Aguilars' chapter 7 case.

**b.    Findings of the Court**

42.    From the absence of evidence to the contrary, the Court infers that at no time relevant to this proceeding did the Aguilars transfer their interests in condominium units 2 or 4 to themselves as trustees of the 66 Hooper Street Condominium Trust.

43.    The Condominium Trust specifies that the beneficiaries of the Condominium Trust are the unit owners of the condominium, with the entire beneficial interest being divided among the unit owners according to percentages appertaining to their respective units as specified in Exhibit B to the Master Deed.[4]  Exhibit B to the Master Deed specifies that Units 1, 2, and 4 each have proportionate interests of 24.46 percent, and Unit 3 has a proportionate interest of 26.62 percent.  The Condominium Trust further specifies that the initial board of trustees of the trust shall consist of Sergio and Xiomara Aguilar.  There being no evidence to the contrary, the Court concludes that the Aguilars were the trustees of the trust at all times relevant to this proceeding.

44.    The unit deeds for Units 2 and 4 identify the grantors at the very beginning of the deed as follows: "Grantor: Janet Aguilar and Sergio D. Aguilar as Trustees of the 66 Hooper Street Condominium Trust u/d/t dated February 7, 2005, and recorded in the Suffolk County Registry of Deeds at Book 36484, Page 199."  Later, in each unit deed, the words of conveyance identify the grantors as follows:  "Janet Aguilar and Segio D. Aguilar, as Trustees, both of Chelsea, Massachusetts (hereinafter collectively called the "Grantor")."  In each unit deed, the signature lines for the grantors identify the signers as "Janet Aguilar, Trustee as Aforesaid" and "Sergio D. Aguilar, Trustee as Aforesaid."  The Aguilars signed each deed simply as "Janet Aguilar" and "Sergio D. Aguilar."  Nowhere in the units deeds are the grantors identified as the Aguilars in their individual capacities.

45.    The Master Deed does not purport to convey the property, either 66 Hooper Street as a whole or the individual condominium units, from the Aguilars to the Condominium

---

[4] Condominium Trust, Article IV, Section 1.

8

Trust. Rather, it merely and expressly submits the 66 Hooper Street property to the provisions of Chapter 183A of the General Laws of the Commonwealth of Massachusetts and creates a condominium to be governed by Chapter 183A. The Master Deed identifies the parties executing the Master Deed and submitting the property to Chapter 183A as "Sergio D. Aguilar and Xiomara J. Aguilar, a/k/a Janet Aguilar," without reference to themselves as trustees of the Condominium Trust. The Aguilars also signed the Master Deed in their individual capacities, not as trustees of the Condominium Trust. In paragraphs 9 and 10 of the Master Deed, the Master Deed indicates that the Aguilars are the trustees of the Condominium Trust.

46.   The Amendment is signed by the Aguilars in their individual capacity; that is, the signature lines identify the signers simply as "Sergio D. Aguilar" and "Xiomara J. Aguilar a/k/a Janet Aguilar" without reference to themselves as trustees. The first sentence of the Amendment reads as follows:

> We, Sergio D. Aguilar and Xiomara J. Aguilar a/k/a Janet Aguilar, Trustees of Hooper Street Condominium Trust, under Declaration of Trust dated February 7, 2005, recorded in th Suffolk County Registry of Deeds in Book 36484 at Page 199, owner of all the units and holder of 100% of the undivided interest of all unit owners interest in the Hooper Street Condominium Trust, a condominium established by Master Deed dated February 7, 2005, and recorded with the Suffolk County Registry of Deeds in Book 36484 at Page 190 (the "Master Deed"), hereby Amend the Master Deed as follows: . . . ."

The Amendment, which was executed and recorded on the same date as were each of the unit deeds, was wrong in identifying the Condominium Trust as owner of the units. The Aguilars had not executed a deed transferring title to the Units to the Condominium Trust.

47.   On the basis of the Amendment, the unit deeds, and the parties' stipulation that the Aguilars intended to convey good title to the defendant purchasers, the Court finds that it

9

was the intent of the attorney or attorneys who structured the transfers for title to the units to pass to the purchasers through the Condominium Trust. However, those attorneys failed to ensure that title to the units was first transferred by the Aguilars in their individual capacities to the Trust. This resulted in a mistake on the part of the transferors, the Aguilars in their individual capacities and as trustees of the Condominium Trust, who intended in both capacities to pass whatever title they held in the units to the purchasers. It was also a mistake on the part of the intended transferees, Dexter and Betty, each of whom paid the agreed purchase price and accepted the proffered deeds in reliance on the belief that the Aguilars as trustees had title to pass to them.

48. The Grantor Index at the Suffolk County Registry of Deeds lists each of the unit deeds under the grantor names "Sergio D. Aguilar," "Xiomara J. Aguilar," and "Janet Aguilar."

**POSITIONS OF THE PARTIES**

The Trustee argues that the condominium units are property of the estate under 11 U.S.C. § 541(a)(1) because, as of the date of the bankruptcy filing, the Debtors still held legal and record title to the units as tenants by the entirety. According to the Trustee, there was a fatal flaw in the Debtors' attempt to convert their property to a condominium and then to transfer the units to Dexter and Betty. That flaw was the Debtors' failure to convey the units to the Condominium Trust. As a consequence of this flaw, the Trustee argues, when the Debtors, purporting to act in their capacities as trustees of the Condominium Trust, conveyed the units to Dexter and Betty on March 24, 2005, they had no interest to convey in that stated capacity. Given the failure of the conveyance, the units remained the property of the Debtors, which was the state of ownership on March 3, 2008, when the Debtors filed their bankruptcy petition. The Trustee, however, stipulated at oral argument that the Debtors intended to convey all of their right, title, and interest to the individual condominium units to Dexter and Betty when they

executed and delivered the unit deeds.[5]

The Trustee also argues that he can defeat any equitable or legal argument made by the Defendants that the conveyances to Dexter and Betty were effective to convey any equitable interests in the units to them prepetition. First, he argues that, pursuant to the "strong arm" powers of § 544(a) of the Code, he holds all the rights and powers of a judicial lien holder and of a hypothetical bona fide purchaser as of the commencement of the case. Armed with these powers, the Trustee contends that he can defeat any theory advanced by the Defendants that the unit deeds conveyed anything to Dexter and Betty. Second, anticipating the Defendants' argument for reformation, he argues that mutual mistake would not permit reformation of the unit deeds in order to effect the conveyance urged by the Defendants. The Trustee relies on § 544(a) and says that, in view of the trustee's status as a bona fide purchaser, he can be charged with no knowledge of their mistake and no sharing in their mutual understanding. Whatever strength the argument for reformation would have against the Debtors themselves outside of bankruptcy, it cannot prevail against the Trustee as a bona fide purchaser. The argument for reformation is thus rendered impotent by the strong arm powers of the Code.

Finally, the Trustee relies on the case of *In re Giroux (Agin v. MERS et al.)*, 2009 WL 1458173 (Bankr. D. Mass. 2009) and argues that the Unit Deeds from the Debtors to Dexter and Betty were ineffective to provide constructive notice to the Trustee because they referred to the Debtor grantors as "trustees" of the condominium trust, not to the Debtors in their individual capacities.

The Defendants start their opposition by stating that the Trustee's argument that the Debtors failed to convey the Unit Deeds because they did not hold title as trustees of the Condominium Trust "may seem appealing because it is simple." The argument, they say, relies on an overly simplistic and legally erroneous understanding of Massachusetts condominium law, G.L. c. 183A (1988 ed.). The Defendants argue that the Debtors effectively conveyed title when

---

[5] Trans. p. 8.

they executed and delivered the unit deeds. The units were created at the moment the Master Deed was executed and recorded. Once the Master Deed is recorded, the property is divided into the individual condominium units and the common areas. The owner continues to hold title to the units until the owner executes and delivers unit deeds to third parties. According to the Defendants, other than some technical requirements, an effective unit deed under Massachusetts G.L. c. 183A, § 9(b), need only describe the land to be conveyed and make reference to the recording information of master deed in order to make an effective conveyance. Defendants say that the unit deeds here did just that and that any references to the Condominium Trust was mere surplusage. So, they contend, the conveyances to Dexter and Betty removed the units from the Debtors' estate long before the bankruptcy filing. In addition, the Defendants cite the case of *Kaufman v. Federal National Bank*, 287 Mass. 97 (1934), wherein the court held that a conveyance by a person "as trustee" was effective to convey the asset in question, even where the asset was held in her individual capacity and not as trustee.

In seeking to defeat the Trustee, the Defendants also rely on their reading of the limits of § 541(a) of the Code. They point out that while § 541(a)(1) brings into the estate "all legal and equitable interests of the *debtor* in property as of the commencement of the case," § 541(d) states that where the debtor holds only legal title and not an equitable interest, that equitable interest does not become property of the estate. The estate excludes a claimant's equitable interests in the debtor's property. Defendants argue that the Debtors could only have held bare legal title to the units after the conveyances to Dexter and Betty, who in turn would have had a right to reform the deeds if in fact they were ineffective to convey title. The Defendants then argue that while the Trustee is not charged with any actual knowledge—either his own or that of any creditor—that might defeat his claim to assets of the Debtors, he is charged with constructive notice of previously recorded instruments; and, in this instance, these instruments make plain that the Debtors merely misidentified the capacity in which they conveyed the units.

12

**ANALYSIS**

The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). The estate is comprised of the property identified in subsection 541(a), subject to the exceptions and exclusions articulated in subsections 541(b), (c), and (d). In relevant part, the estate includes, "[e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However,

> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). These are the relevant provisions of § 541. When a non-debtor party asserts an unrecorded equitable interest in an asset in which legal title otherwise remains in the debtor, § 544(a) of the Bankruptcy Code also comes into play. By virtue of 11 U.S.C. § 544(a), a trustee in bankruptcy holds the assets of the bankruptcy estate not merely as the debtor held them but with the so-called "strong-arm powers." The trustee here invokes those set forth in § 544(a)(i) and (iii).

Given this statutory backdrop, the parties' arguments present a series of three issues. The first is whether the Unit Deeds effectively conveyed title to the Units from the Debtors to the purchasing defendants, Dexter and Betty. If they did, then the Debtors did not own the Units as of the commencement of their bankruptcy case, the Units are not assets of the estate, and this inquiry need go no further. However, if the Deeds did not effectively convey title, the Court must proceed to a second issue: whether, as of the commencement of the bankruptcy case, and by virtue of the transactions in which all parties believed that Dexter and Betty were acquiring whatever interests the Debtors had to convey, Dexter and Betty had become entitled, as against the Debtors, to an equitable remedy, perhaps in the nature of reformation of their deeds, by

13

virtue of which they may be deemed to have acquired the equitable interests in their respective Units. If not, then the estate includes not only legal title but also all equitable interest in the Units. However, if the Defendants prevail on this second issue, the Court must resolve a third: whether the Defendants' entitlement to an equitable remedy is available not only against the Debtors but also against the Trustee as armed with his strong-arm powers under § 544(a)(i) and (iii).

The first issue presented is whether, notwithstanding their execution by the Aguilars "as trustees," the unit deeds were effective to convey the Aguilar's individual interests in the units to Dexter and Betty. Each unit deed identified the grantors as "Janet Aguilar and Sergio D. Aguilar as Trustees of the 66 Hooper Street Condominium Trust." In each unit deed, the signature lines for the grantors identify the signers as "Janet Aguilar, Trustee as Aforesaid" and "Sergio D. Aguilar, Trustee as Aforesaid." Nowhere in the units deeds are the grantors identified as the Aguilars in their individual capacities. And nowhere in the unit deeds did the Aguilars expressly state that they were not acting in their individual capacities. On these facts, did the unit deeds convey title that the Aguilars held only in their individual capacities and not as trustees of the Trust? It is undisputed that the units were always owned by the Aguilars in their individual capacities, as tenants by the entirety, and never as trustees of the 66 Hooper Street Condominium Trust. No one contends that the Master Deed or any other instrument ever conveyed the units from the Aguilars in their individual capacities to themselves as trustees of the Trust. Therefore the first issue is solely one of the effectiveness of a deed executed by the Aguilars as trustees to convey title that they owned other than as trustees.

The Bankruptcy Code specifies those of a debtor's rights and assets that become assets of the bankruptcy estate, but the court must look to state law to determine the extent of a debtor's interests in property as of the date of the commencement of their case. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918 (1979) ("Congress has generally left the determination of property rights in the assets of a bankruptcy estate to state law."). In this instance the relevant

14

law is that of the Commonwealth of Massachusetts.

The Supreme Judicial Court pronounced directly on this issue in *Kaufman v. Federal National Bank*, 287 Mass. 97 (1934). In that case, one Celia Green, acting in her capacity as trustee of a certain trust, had assigned to the appellee bank a mortgage that she held only in her individual capacity. The instrument of assignment indicated that she was acting "as trustee." *Id*. at 98. The court held:

> The signature of Celia Green as trustee was as effective to convey her individual property as though she had signed simply her name. At law, the official and individual capacities of a trustee are not separated. A trustee simply owns the property, subject to such equitable rights of the cestui as may exist. [Citations omitted.]

*Id*. at 101-02. *Kaufman* thus stands for the proposition that a conveyance by a person in her stated capacity as trustee also binds the trustee in her individual capacity and conveys any interest that she may have in the asset in that capacity. The theory is that, subject to limited exceptions, a trust has no separate existence from the trustee; it is not a separate legal entity, as would be a corporation. The only entity is the person of the trustee, who simply owns the property, subject to the equitable rights of the beneficiary.[6] *Kaufman* remains good law; the Trustee has cited no Massachusetts authority to the contrary, and I am aware of none.[7]

*Kaufman* is directly on point. Here, as in *Kaufman*, the Aguilars, as grantors, executed the unit deeds "as trustees" but owned the units in their individual capacities. As in *Kaufman*, this Court must and hereby does conclude that the signatures of the Aguilars "as trustees" were

---

[6] See *Larson v. Sylvester*, 282 Mass. 352, at 357-58 (1933), where the court explained:

> Speaking generally a trust is not a legal personality. With the exception later to be dealt with, it cannot be sued. It is represented by the trustee. He embodies it. He holds title. He deals with the property in which trust rights exist. Contracts with regard to the rights and property affected by trusts are the contracts of the trustee. He, in person, is liable upon them. He is not acting as representative or agent of another. He is acting for himself, but with fiduciary obligations to others.

[7] The Trustee has not addressed it, either in his briefs or at oral argument.

15

effective to convey their individual interests in the units.  It follows that the Debtors had no remaining interests in the units when they filed their bankruptcy petition and that the units are therefore not assets of their bankruptcy estate.  Having so concluded, I need not address the parties' remaining arguments.  A separate judgment will enter for the Defendants, declaring that the conveyances were effective and that the bankruptcy estate has no interest in the Units.

Date:   June 23, 2010

_____
Frank J. Bailey
United States Bankruptcy Judge